UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ACE PROPERTY AND CASUALTY<br>INSURANCE COMPANY<br>　　Plaintiff, | :<br>:<br>:<br>: | |
| v. | : | 3:16-cv-01859-WWE |
| | : | |
| LIBERTY MUTUAL FIRE INSURANCE<br>COMPANY and<br>LIBERTY INSURANCE CORP.,<br>　　Defendants. | :<br>:<br>:<br>: | |

## MEMORANDUM OF DECISION ON
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This is an action for declaratory relief under Connecticut General Statutes §52-29 regarding priority of insurance coverage. ACE Property and Casualty Insurance Company seeks a declaration that the additional insured coverage afforded by Liberty's primary and umbrella policies must be exhausted before ACE's umbrella policy is triggered.

### BACKGROUND

On March 9, 2012, a series of car accidents occurred on I-395, approximately one mile from the Montville Service Plaza. The accidents were caused by an intoxicated motorist who had been loitering and living in his vehicle at the Plaza. Multiple plaintiffs brought suit in Connecticut state court against various defendants affiliated with the Plaza, including Project Service LLC, OR&L LLC, Alliance Energy LLC, and 4MM LLC. ACE provided a commercial liability policy to Project Service, while Liberty provided primary and umbrella policies to OR&L. The jury found in favor of the plaintiffs and against each of the individual defendants, with the following allocation of responsibility:

　　40% Project Service;
　　20% OR&L;
　　20% Alliance/Global;
　　20% 4MM.

1

The plaintiffs in the underlying case filed a motion seeking to aggregate the percentages so that Project Service would be held 100% responsible, based on the argument that Project Service's contractual undertaking makes it liable for anything done by any subcontractor. The plaintiffs similarly argued that Alliance should be held 40% responsible, to aggregate its percentage and that of 4MM, for which it was allegedly responsible by contract. The court denied that motion, and the issue is now the subject of an appeal by the plaintiffs. Each of the defendants also filed appeals from the state court judgment. None of the various appeals have been decided. In addition, cross-claims between the various defendants remain pending.

## DISCUSSION

"The Declaratory Judgment Act by its express terms vests a district court with discretion to determine whether it will exert jurisdiction over a proposed declaratory action or not." Dow Jones & Co., Inc. v. Harrods Ltd., 346 F.3d 357, 359 (2d Cir. 2003). "Courts have consistently interpreted this permissive language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear." Id.

The Second Circuit has articulated five factors that it and other circuits have developed to guide district courts in deciding whether to exercise discretionary jurisdiction over a declaratory judgment action. District courts should ask: (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (5) whether there is a better or more effective remedy. See Dow Jones, 346 F.3d at 359-60.

It is not clear whether a ruling by this court would clarify the legal issues involved in this matter. A ruling could instead spur more litigation in both in the federal forum on appeal and in the parallel state court case, where, in addition to the underlying substantive litigation, the parties would have to contest the dispositive effect of this court's judgment on the state court proceedings. Those state court proceedings are well underway, with jury verdicts reached on fundamental underlying issues, including determinations of fact regarding various parties' negligence.

Given the maturity of the underlying state court litigation, procedural fencing can reasonably be inferred from this action. Indeed, a decision by this court in favor of plaintiff would likely interfere with the other parties' pursuit of their claims on other fronts. Such a decision could increase friction or improperly encroach on the state court, as the judgment sought here is intended to prescribe the application of Connecticut law by a Connecticut state court with original jurisdiction over the subject matter.

The state court is in a better position to determine the appropriate legal ramifications of its verdicts. For example, the parties dispute whether the jury's verdict should collaterally estop Liberty from denying OR&L's (its insured) negligence. Moreover, the state trial court has severed various cross claims among the defendants from the trial of the plaintiffs' underlying action. Project Service has brought cross claims against OR&L and 4MM, and those cross claims remain pending. As to OR&L, Project Service alleges contractual obligations to indemnify and to procure insurance under the Concession Agreement. The state court, having tried the underlying case, is in a better position to reach a global resolution on all issues of fault, interrelated insurance contracts, and indemnification agreements. Considering that not all parties to the underlying action are present here, the state court is also in a better position to disentangle and decide ultimate liability between all interested parties.

The state court is in a better position to provide an effective remedy.  See Niagra Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 104 (2d Cir. 2012) ("Under the *Wilton* test, to avoid wasteful and duplicative litigation, district courts may often dismiss declaratory judgment actions where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.").  Abstention will likewise avoid piecemeal litigation and its risk of inconsistent outcomes.  See id. at 101-02.

**CONCLUSION**

Plaintiff's motion for summary judgment is DENIED.  However, the Court will stay this matter pending resolution of the underlying state court litigation.  See Wilton v. Seven Falls Co., 515 U.S. 277, 288 n. 2 (1995) ("[W]here the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy.").  A brief status report on the progress of the underlying state court litigation is due October 1, 2018.

Dated this 30th day of May, 2018, at Bridgeport, Connecticut.

    /s/Warren W. Eginton
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE